COBB, W., Senior Judge,
dissenting:
The majority opinion seemingly has ignored two concessions made by counsel for the appellants (hereinafter Doyle) at oral argument:
1. The transaction brokerage agreement between the parties[1], which was dated July 28, 1999, was still in effect and binding on Doyle and the Maruszc-zaks as of October 29, 1999, the date Doyle bought Lot 11 from the Mar-chants.
2. Had the Maruszczaks bypassed Doyle and purchased the property directly from the Marehants in October, 1999, Doyle would have been due a commission from the Maruszczaks pursuant to the July 28, 1999, brokerage agreement.
Moreover, as observed by the appellees in their brief, it is undisputed that the Maruszczaks had identified Lot 11 (among other lots) to Doyle as a lot in which they had at least a preliminary purchase interest.
Given the forgoing facts, it would appear that the majority opinion also has overlooked a fundamental concept of law in *311 regard to bilateral contracts: mutuality of obligation. Doyle’s position, which I find legally untenable, is that the Maruszezaks owed a fiduciary obligation of good faith to him but he owed none to them[2]. Hence, despite the express terms of the brokerage contract, he was not obligated to notify the Maruszezaks of the reduction in asking price for Lot 11 by the Marehants after expiration of the listing on September 15— even though the contract between Doyle and the Maruszezaks was still extant. Clearly, he was so obligated, and whether or not the Maruszezaks had been able to effectuate a deal with the Marehants for their purchase of Lot 11 has no bearing on the existence and breach of the fiduciary obligation owed to them by Doyle.
The majority opinion relies on the proximate cause concept, given the affidavit of Mary Anne Marchant, that the Marusze-zaks were not deprived of the purchase of Lot 11 by Doyle’s fiduciary breach since the Marehants still would have refused to sell to them-or to anyone other than Doyle. Thus, says the majority, a factual issue as to the veracity of the Marchant affidavit is created and summary judgment is precluded. The problem with this argument is that it has never been raised by Doyle (probably because he recognized the credibility problem it presented). The law is clear that such argument has been waived, even in a summary judgment context. See Sokoloff v. Corinto S.S. Co., 225 So.2d 554 (Fla. 3rd DCA 1969)
I find the affidavit of Mary Anne Mar-chant stating that she simply would not sell Lot 11 to the Maruszezaks, even though she did not know them and even though the lot had been listed on the open market for months, inherently incredible— as, apparently, did the trial judge. It should be noted that Marchant does not assert that she told Doyle she would not sell to anyone else. Doyle does not maintain that he failed to transmit the information from Marchant because she would not sell to the Maruszezaks. Doyle simply believed that despite the transaction agreement and his status as agent for the Maruszezaks, he was not precluded from grabbing what he perceived to be a good deal for himself.
I would affirm.

. The transaction brokerage agreement provided in pertinent part:
As a transaction broker, Hernando Beach Realty, Inc., provides to you a limited form of representation that includes the following duties:
1. Dealing honestly and fairly;
4. Disclosing all known facts that materially affect the value of real property and are not readily observable to the buyer;
5. Presenting all offers and counter offers in a timely manner, unless a party has previously directed the licensee otherwise in writing;

. Surely, the legendary Professor Kingsfield would have disdainfully rejected this curious concept of unilateral obligation. See Osborn, The Paper Chase, Houghton Mifflin (197.1).